UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:11-00012-33 |
| | ) | Judge Sharp |
| MICHAEL MASSEY | ) | |

**ORDER**

On July 23, 2014, this Court entered a Memorandum Opinion and Order (Docket No. 2269) denying Defendant Michael Massey's "Motion for Review of Detention Order" (Docket No. 2218). In doing so, the Court noted that, in the Second Superseding Indictment, Defendant is charged in nine counts, including three very serious charges: Count 11 charges Defendant and others with carrying, brandishing, and discharging firearms in relation to attempted robbery; Count 12 charges Defendant and others with carrying firearms during that attempted robbery, which resulted in the death of Raul Arias Triana; and Count 17 charges Defendant and two co-defendants with using a firearm during a different robbery. For those charges Defendant faces three life sentences and an additional 120-years imprisonment. In the penultimate paragraph of the decision, the Court wrote:

> Obviously, using firearms in the commission of a crime and engaging in violence or threatening violence pose a danger to the community. The return of the Indictment shows that there is probable cause to believe that Defendant engaged with others to commit armed robbery or attempted armed robbery and participated in an attempted robbery that resulted in death. Defendant has presented no evidence that convinces the Court that he will refrain from engaging in dangerous and unlawful activity or consorting with those who do were he to be released pending trial.

(Docket No. 2269).

The day after this Court's opinion, Defendant's wife, Shemiah Massey, gave birth to their son at the Jackson Madison County General Hospital in Jackson, Tennessee. The baby was born

1

prematurely (after thirty-one weeks) and weighed 3 pounds. The following day, Defendant filed an Emergency Motion for Contact Visitation and Hospital Visitation, requesting an Order that would allow him "1) to visit the hospital where his child is being treated on a periodic and regular basis, under appropriate guard and; (2) once the child leaves the hospital in approximately two months to have contact visitation with his infant son under such security conditions as may reasonably be fashioned by the Bowling Green Detention Center to facilitate such visits." (Docket No. 2275 at 3). The Government filed a response in opposition to Defendant's Motion on July 31, 2014 (Docket No. 2282).

## I.

Defendant premises his Motion on the Eighth Amendment right to be free from cruel and unusual punishment and the Sixth Amendment right to the effective assistance of counsel. With regard to the former, Defendant notes that (1) "[i]n Woodson v. North Carolina, 428 U.S. 280, 303 (1976), the United States Supreme Court determined that the death penalty cannot be carried out without 'particularized consideration of relevant aspects of the character and record of each convicted defendant'"; (2) "the Supreme Court has established a substantial body of case law, dating back more than thirty years, establishing the broad right of capital defendants, under the Eighth Amendment to the United States Constitution, to present and have the jury consider all relevant mitigating evidence at a capital sentencing hearing"; and (3) the Federal Death Penalty Act reflects this broad right by providing that the sentencing jury "shall consider any mitigating factor[.]" (Docket No. 2275 at 3-6). As to the latter, Defendant argues that (1) "[w]hen life is at stake, counsel are required to exhaustively explore every aspect of the 'defendant's character . . . and any of the circumstances of the offense . . . ,' Lockett v. Ohio, 438 U.S. 586, 604 (1978)"; (2) when a defendant

2

is facing capital charges, counsel "must in effect prepare for two very different trials – one to determine guilt or innocence, and the second to determine punishment"; and (3) the paramount task counsel must perform in ensuring that "the defendant's sentence will be based on an individualized determination of his personal moral culpability" is to "conduct a thorough mitigation investigation." (Id. at 9). Defendant also relies primarily upon two cases – United States v. Hack, N0. 1:12-cr-0063-PMP (D. Nev. 2012), and United States v. Savage, No. 07-550-03 (E.D. Pa. 2007) – which he claims presented "substantially the same" facts as his case.

In response, the Government states that it "does not dispute defendant's constitutional right to develop and present evidence which a jury might consider in mitigation of the death penalty." (Docket No. 2282 at 1). Further, the Government argues that "[a]lthough a defendant may be given 'wide latitude' in presenting mitigating evidence, Roper v. Simmons, 543 U.S. 551 (2005), this does not equate to a right to personally participate in the gathering or creation of every aspect of such evidence, nor does it negate the responsibility of the government, including the United States Marshal Service, to protect the public from defendants found to be a danger to the community." (Id.).

## II.

The Court will deny Defendant's request for hospital visitation. Potential mitigation evidence aside, the Court certainly understands Defendant's desire to meet and bond with his new son, a desire that may be more intense given that the child was born prematurely and remains in the hospital. However, this Court must also be cognizant of the security concerns that a trip from the jail to the hospital and back present.

Almost 200 miles of public roadway separate Bowling Green and Jackson, a route that

cannot be controlled by United States Marshals Service personnel.  Further, the Marshals service cannot control the hospital environment and bringing a prisoner into a hospital raises security concerns in relation to the patients, staff, and members of the public.  Additionally, the Government has been informed by the Marshals Service that transporting Defendant will not only be costly, but would impact coverage at the courthouse.  For each visit, a minimum of four of the ten deputies assigned to the Nashville federal courthouse would be reallocated for an entire day to transport and guard the Defendant.  Moreover, the Defendant's ability to actually bond with his infant son will be somewhat compromised because, according to what the Government has been told by the Marshals Service, Defendant's hands and feet will be shackled, limiting his freedom of movement.

Savage, on which Defendant relies, supports this conclusion.  There, even though the court granted defendant's request that he be allowed visitation with his children while housed at the Federal Detention Center in Philadelphia, the court rejected as impractical the Government's proposed alternative that defendant be allowed to visit his children at the courthouse or FBI office precisely because "of the heightened security that would be required to accommodate such a request outside of the prison setting."  (Docket No. 2275-3 at 8).

### III.

Defendant's request that he be allowed contact visits at the jail presents an entirely different scenario, and both Hack and Savage, though not controlling, may be read to support such a request.*  Nevertheless, the Court agrees with the Government that this request is premature and, in any event,

---

* The Court says "may" because Hack is an unpublished decision that the Court has been unable to locate.  While Defendant apparently intended Exhibit 2 to his Memorandum to be the decision in Hack, that exhibit is actually the defendant's reply brief in that case.  Nevertheless, in that brief, defendant indicated that the government had no objection to a contact visit, although there were some outstanding concerns made by the Marshals Service.  Further, Savage granted defendant's request to visit with his children while incarcerated, although it is not clear from the decision whether that request encompassed contact visits.

4

one that cannot be resolved on the record as presented.

The record does not answer questions such as when the infant will be medically cleared for such visitation, whether certain medical conditions will have to be taken into account in relation to such a visit, and, if so, whether the jail will be able to address those medical conditions. Nor does the record answer the question whether either the facility itself or the Marshals Service have legitimate concerns about security in relation to a contact visit at the jail. Further, it is possible that Defendant's place of detention could be changed by the time the baby is in a position to visit. Accordingly the request for contact visits at the detention center will be denied at this time.

**IV.**

Based on the foregoing, Defendant Emergency Motion for Contact Visitation and Hospital Visitation (Docket No. 2275) is hereby DENIED. Said denial is without prejudice to Defendant filing a renewed motion for contact visitation at the correctional facility in which he is housed at the appropriate time.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE